UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| VIRGINIA K. PICKARD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-1688-LJM-WTL |
| | ) | |
| STEPHEN J. LERCH and | ) | |
| DAVID M. WRIGHT, | ) | |
| Defendants, | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment brought by plaintiff Virginia K. Pickard ("Pickard") and defendants Stephen J. Lerch and David M. Wright, doing business as Wright & Lerch, Attorneys at Law ("Wright").  Pickard's claims are based on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Pickard seeks summary judgment on her claim that Wright violated the FDCPA by sending her an improper collection letter; Wright seeks summary judgment on its claim that the letter was appropriate. The parties have fully briefed their arguments, and the motion is now ripe for ruling.

**I.  FACTUAL BACKGROUND**

In late January of 2003, Pickard received a letter from Wright (hereinafter the "Wright letter") stating that she owed $1,329.83 in principal and interest to Wright's client Cavalry SPV II, L.L.C. ("Cavalry"), as assignee of Conseco Finance Corp.  Pl. Br. at 2.  The letter was dated January 20, 2003.  *Id.*  The Wright letter stated in pertinent part:

> As of the date of this letter the creditor advises us that you owe $1,329.83. This amount is principal and interest as of the exact date of this letter. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the date that you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

Pl. Ex. A.

Shortly after receiving the Wright letter, Pickard received a "Statement of Account" letter dated January 9, 2003, from Cavalry (hereinafter the "Calvary letter"). Pl. Br. at 2. This statement identified a debt of $1,323.49 in principal and $391.47 in interest, at a 15.9% interest rate, that Pickard owed Calvary as of January 9, 2003. Pl. Ex. B. In total, the Calvary letter identified a debt of $1,714.96 in principal and interest as of January 9, 2003. *Id.*

Prior to this action, Pickard brought a similar action against Cavalry for its role in a related alleged FDCPA violation.[1] Def. Br. at 3. That action settled out of court with prejudice. *Id.* While the precise terms of the settlement are confidential, for informative purposes here the settlement was favorable to Pickard and contained a clause stipulating that no terms of the settlement were to be imputed to this case. *See* Pl. Reply at 4. Also prior to this action, on March 24, 2003, Wright brought a claim against Pickard in the Small Claims Court in Perry Township of Marion County, Indiana. Pl. Ex. C. That claim alleged that Pickard owed Calvary $1,323.49, plus interests and costs, and cited the Calvary letter as its principal evidence. *Id.*

---

[1] Although the Calvary letter was used in Pickard's action against Calvary, it was used as a point of contradiction with an earlier letter Calvary sent to Pickard, dated December 20, 2002. *See* Def. Br. at 3. Hence, the FDCPA violation alleged against Calvary in the earlier action is independent of the FDCPA violation here alleged against Wright.

## II. SUMMARY JUDGMENT STANDARDS

As stated by the Supreme Court, summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary

3

judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).  Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support.  *See Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).

## III. <u>DISCUSSION</u>

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors . . . and . . . to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To this end, the FDCPA requires debt collectors, either in the initial communication with the debtor or within five days of that communication, to give notice to the debtor of "the amount of the debt."  15 U.S.C. § 1692g(a)(1).  Generally, this statute requires the "amount of the debt" to

4

be the total debt known at the time of the dunning letter, although the debt collector can protect itself for future increases in debts by including a safe harbor provision. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875-76 (7th Cir. 2000).

The FDCPA also prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In determining whether an assertion is false or misleading, the unsophisticated consumer standard applies. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). "[T]he standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). This standard assumes that the debtor is "uninformed, naïve, or trusting"; however, the statements are not confusing or misleading unless "a significant fraction of the population would be similarly mislead." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). *See Frye v. Bowman, Heintz, Boscia, and Vician, P.C.*, 193 F. Supp. 2d 1070, 1077 (S.D. Ind. 2002).

Further, "[w]hen there are two different accounts of what a debtor actually owes a creditor, that one version is the correct description does not save the other, since under the unsophisticated consumer standard, 'a letter may confuse even though it is not internally contradictory.'" *Veach*, 316 F.3d at 693 (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). "[A] violation of the FDCPA occurs when a dunning letter is confusing to the unsophisticated reader, even if the letter technically complies with the FDCPA." *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Whether Wright's assertions were intentionally or knowingly false or misleading is irrelevant for determining if these provisions of the FDCPA were violated, although such information may be

5

relevant to an affirmative defense if such a violation is found.[2]  *See Turner*, 330 F.3d at 995-96; *Frye*, 193 F. Supp. 2d at 1076-77.

### A.  WHETHER WRIGHT FAILED TO STATE THE AMOUNT OF THE DEBT

Pickard alleges that Wright's actions violated 15 U.S.C. § 1692g(a)(1) for failing to state the amount of debt owed and instead stated only a portion of the amount owed.  Pickard asserts that her receipt of the Calvary letter, and Wright's reliance on the Calvary letter in a later legal action, stating an amount of debt owed different from the amount stated in the Wright letter is a per se violation of the FDCPA; that is, no finding of intent or knowledge by Wright is necessary. *See Turner*, 330 F.3d at 995; *Frye*, 193 F. Supp. 2d at 1076-77.  Pickard primarily relies on the Seventh Circuit's decision in *Miller* in support of her allegations.

In *Miller*, the Seventh Circuit found that a dunning letter that stated *only* the unpaid principal balance, when a known amount of interest had accrued, violated the FDCPA.  "The unpaid principal balance is not the debt; it is only part of the debt; the Act requires statement of the debt." *Miller*, 214 F.3d at 875.  The Seventh Circuit was careful to distinguish known debts, such as already accrued interest, and unknown debts, such as interest to-be-accrued, in its understanding of the debt collector's obligation to state the "amount of debt." *Id.* at 875-76. The debt collector in *Miller* was required to state the amount of known debt as of the date of the dunning letter.  Pickard argues that *Miller* is analogous because Wright stated only a portion of the debt.

Pickard's supporting exhibits meet her burden of proof that the statement in the Wright letter of the amount of the debt was a false statement.  Both the Calvary letter and Wright's

---

[2] Wright makes no plea of such an affirmative defense.

previous state action against Pickard[3] demonstrate that the "amount of the debt" stated in the Wright letter was false.  Thus, the burden is shifted to Wright to show otherwise; a mere self-serving allegation is insufficient to meet that burden.  *See Cliff*, 42 F.3d at 408.

Wright claims that the amount it stated in its letter to Pickard for $1,329.83 was the correct total amount, and, regardless, Wright's recalculation of Pickard's debt in Pickard's favor is protected by the overarching policies of consumer protection codified in the FDCPA.  Wright supports its first defense with an answer to an interrogatory.  This evidence is offered to show that Wright believed Calvary's assessment of debt to be in error, and therefore Wright recalculated the debt, although it did so without consulting Calvary.  Def. Br. at 9.  Pickard contends that this evidence is inadmissible because the FDCPA provides for strict liability; any arguments that a defendant did not violate the Act because that defendant lacked an element of intent or knowledge to violate it are erroneous and irrelevant.[4]  *See Turner*, 330 F.3d at 995-96; *Frye*, 193 F. Supp. 2d at 1076-77.  The Court agrees.  That Wright believed it was correct has no bearing on whether Wright was in fact correct; therefore, Wright's answer to the interrogatory is irrelevant to this aspect of the allegation against it.  Wright fails to present any admissible evidence that the amount of the debt in the Wright letter was correct and, as such, Wright fails to meet the burden necessary to avoid summary judgment against it.  *See Ortiz*, 94 F.3d at 1124.

Wright further defends itself by citing the safe harbor language approved of in *Miller* and mimicked in the Wright letter.  Def. Br. at 8.  In *Miller*, the Seventh Circuit said a debt collector

---

[3] Curiously, this earlier action by Wright and its reliance on the Calvary letter in that action is conceded by Wright, Def. Br. at 2-3, but no attempt is made by Wright to explain the seeming contradiction in statements made before the Small Claims Court and this Court.

[4] As noted above, however, if Wright were to assert an affirmative defense, it would be allowed to show a lack of knowledge or intent to violate the FDCPA.  *See Turner*, 330 F.3d at 995-95; *Frye*, 193 F. Supp. 2d at 1076-77.  However, Wright makes no assertion of an affirmative defense; Wright solely argues that there was no FDCPA violation.

was allowed to use a "safe harbor" provision to put the debtor on notice that the debt was subject to change. *Miller*, 214 F.3d at 875-76. However, the Seventh Circuit noted that the safe harbor provision was not a catch-all for protecting a debt collector from furnishing inaccurate or confusing information. *Id.* at 876. Wright's reliance on this provision therefore is misplaced. The safe harbor language in *Miller* was intended to protect debt collectors from having to predict what an unknown future fee, such as an amount of interest, will be; this provision is not a catch-all provision to protect debt collectors who provide erroneous information. *See Veach*, 316 F.3d at 693; *Miller*, 214 F.3d at 876.

Finally, Wright argues that its action was precisely the type of action that the FDCPA was intended to protect. To this end, Wright argues that, as an attorney debt collector, it was required under the unsophisticated consumer standard to take steps to ensure its involvement in the debt collection process entailed professional judgment and assessment as to the validity of the debt beyond merely what the creditor relayed to Wright. *See Nielson v. Dickerson*, 307 F.3d 623, 637-39 (7th Cir. 2002). However, a heightened level of scrutiny for attorney debt collectors does not mean that any increased involvement is necessarily a protected involvement. Indeed, as has been noted, "if the creditor's records are insufficient to calculate [the] amount, the debt collector proceeds at his peril." *Bernstein v. Howe*, No. 02-192-C-K/H, 2003 U.S. Dist. LEXIS 5284, at *12 (S.D. Ind. Mar. 31, 2003). Here, Wright claims that it believed Calvary's records to be in error, but rather than inform Calvary of this supposed mistake and attempt to reach an understanding with its client as to the correct amount of debt, Wright decided to proceed with the debt collection. Def. Br. at 9. The fact that Wright decided to underestimate the amount of debt allegedly owed rather than overestimate is unavailing. *See Miller*, 214 F.3d at 875-76.

8

The above analysis is also applicable to Pickard's claims that Wright violated 15 U.S.C. § 1692e.  While there is no need for an independent analysis of whether the Wright letter was misleading under section 1692e, to be sure, even if the Wright letter was not literally false in its statement of the amount of the debt, the Wright letter was confusingly misleading.  The contradiction between Wright's statement in the Wright letter and Wright's statement to the Small Claims Court creates a § 1692e confusion under the unsophisticated consumer standard, regardless of which of the two statements – if either – was correct. *See Veach*, 316 F.3d at 693; *Marshall-Mosby*, 205 F.3d at 326.

For the above stated reasons, this Court **GRANTS** Pickard's Motion for Summary Judgment and **DENIES** Wright's Motion for Summary Judgment.


### B. DAMAGES

Section 1692k(a) allows this Court to award Pickard no more than $1,000 in statutory damages.  15 U.S.C. § 1692k(a).  Neither party generally addresses an assessment of statutory damages in their briefs.  In assessing statutory damages, the Court will consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance . . . the extent to which such noncompliance was intentional," and any other relevant factors.  15 U.S.C. § 1692k(b)(1).

Wright does argue that this Court should deduct from its assessment of liability any award that Pickard received in her settlement with Calvary.  Wright concedes that it has no legal authority to support such a setoff.  Def. Reply at 4.  As noted above, Pickard's claims against Calvary were based on an independent claim of an FDCPA violation by Calvary and a different

set of facts.  It would be unjust for this Court to reward Wright by giving it a setoff based on Calvary's independent FDCPA-related actions and settlement with Pickard.

Pickard makes no claim for actual damages, and the award of reasonable attorney's fees to plaintiffs for a debt collector's violation of any provision of the FDCPA is mandatory.  *See Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164, 1166 (7th Cir. 1997).  This Court finds that Pickard is entitled to recover costs and reasonable attorney's fees, as to be shown by Pickard. Pickard's evidence shall be submitted when the Court hears arguments on whether Pickard is entitled to recover any or all of the $1,000 available as statutory damages.  This hearing will be on **June 15, 2005, at 2:00 p.m., Indianapolis time, in Courtroom 202**, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana.

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Pickard's Motion for Summary Judgment on all issues and **DENIES** Wright's Motion for Summary Judgment on all issues. Damages hearing is set for June 15, 2005, at 2:00 p.m., in Courtroom 202.

IT IS SO ORDERED this 26th day of May, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

10

Distribution to:

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS, LTD
davephilipps@aol.com

Mary E. Philipps
GOMOLINSKI & PHILIPPS, LTD
mephilipps@aol.com

Joseph D. McPike II
ZEIGLER COHEN & KOCH
jmcpike@zcklaw.com

Robert G. Zeigler
ZEIGLER COHEN & KOCH
rzeigler@zcklaw.com

11